UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| GLEN RODRIGUEZ, | ) No. ED CV 10-00523-VBK |
| Plaintiff, | ) MEMORANDUM OPINION ) AND ORDER |
| v. | ) ) (Social Security Case) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1.  Whether the Administrative Law Judge ("ALJ") failed to

```
                consider the treating psychiatrist's evaluation;
      2.   Whether the ALJ properly considered the lay witness's
           statements;
      3.   Whether the ALJ made proper credibility findings; and
      4.   Whether the ALJ posed a complete hypothetical question to
           the Vocational Expert.
```
(JS at 2-3.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed.

**I**

**THE ALJ FAILED TO PROPERLY EVALUATE PLAINTIFF'S MENTAL IMPAIRMENT AND ITS EFFECT ON HIS CAPACITY TO WORK**

Plaintiff protectively filed an application for SSDI benefits on April 22, 2005, which was denied from the administrative level through a hearing before the ALJ, resulting in an unfavorable decision issued on May 2, 2008. (AR 12-19.) Plaintiff alleged an onset date of disability of June 1, 2003 due to schizophrenia and short-term memory loss. Plaintiff's date last insured for Title II disability benefits was June 30, 2004. (AR 45, 70, 76, 83.) The ALJ determined that Plaintiff was not disabled from June 1, 2003 through June 30, 2004. (AR 19.)

The ALJ, who found that Plaintiff suffers from schizophrenia and psychotic disorder (AR 14), appears to have largely relied upon a psychological evaluation conducted on April 2, 2008 at the request of

2

the Department of Social Services (AR 273-77), to find that despite the existence of an obviously serious mental illness, Plaintiff is not disabled from working. For the reasons to be set forth, the Court determines that this decision was erroneous.

Plaintiff was involuntarily hospitalized on July 17, 2003. It bears quoting from a portion of the psychiatric evaluation completed by Dr. Sekhon at the time of Plaintiff's admission:

> "ONSET OF ILLNESS AND CIRCUMSTANCES LEADING TO ADMISSION: This 19-year-old American-Hispanic male brought by the family member to the psychiatric triage because of increased disorganized behavior, talking to self, yelling and screaming, not sleeping, wandering aimlessly, and responding to voices. He was talking about killing himself and others, people are after him. They are afraid of his behavior. He refused to take the medication. In the psychiatric triage, patient was anxious, nervous, easily distracted, and made bizarre gestures, admitted to back spasms, pulling his neck to one side stating that he is having a spasm, then able to hold it. Patient was medically cleared, he was placed on 5150 as a danger to self and gravely disabled. He consented for the medication. He was given Atavan 2 mg IM to control his nervousness, anxiety and spasm. Patient was given Soma and Motrin by the PA to control the spasms."

(AR 159.)

The mental status examination conducted upon Plaintiff's admission indicated, in part, that Plaintiff had poor eye contact, was easily distracted, disorganized, unable to focus, had slow and low

3

speech with very limited content, guarded associations, slowed down with thought blocking, and limited content.  His thought content included hallucinations and delusions.  Plaintiff admitted to vague auditory hallucination, that voices yell and scream at him, tell him to do different things.  He is afraid, gets confused, and his family is not helping him.  He appeared to be responding to internal stimuli.  He had paranoid ideation.  His mood was depressed and irritable, and his affect was anxious, with increased feelings of helplessness, hopelessness, worthlessness, and isolation.  He had difficulty relating to family members.  His concentration and attention span were limited, his memory was impaired recent and remote secondary to disorganized behavior and distraction.  He showed limited insight and judgment.  His impulse control was limited as was his reality testing.  He was considered dangerous to himself and others.  He was further considered to be gravely disabled, unable to make a realistic plan, and had a history of self-neglect.  His family was afraid of his behavior.  He was determined to need acute psychiatric care. (AR 159-160.)

The Commissioner of course concedes the fact of Plaintiff's mental illness, and his involuntary hospitalization in 2003; however, the Commissioner asserts that upon discharge on July 21, 2003, Plaintiff essentially seemed much better.  The Court does not read the discharge diagnosis in such a rosy fashion.  Although he was alert and oriented on discharge, and denied suicidal and homicidal thoughts, at most it was indicated that Plaintiff continued to minimize his symptoms at the time of discharge, but when confronted, admitted to ideas of reference from a television in the past while not under the influence of drugs, and reported hearing thoughts and hearing people

threaten him.  He was felt to be safe for further treatment on an out-patient basis. (AR 152.)

Similarly, the Court does not agree with the summary conclusions of the Commissioner concerning Plaintiff's later treatment, which are reflected in the record at AR 173-198.  Again, the Commissioner notes isolated incidents in which Plaintiff reported that he felt better and denied hearing voices.  These are, however, just isolated snippets from the record, which, overall, reveals that Plaintiff continued suffering from his mental illness, and continued hearing voices (see, e.g., AR 177, 179).  Indeed, on April 25, 2005, Dr. Eklund determined that he suffered from auditory hallucinations; his thought content was paranoid/persecutory, and nihilistic; his recent memory was rated at zero/three, and he continued to be diagnosed as having a schizoaffective disorder, bipolar type. (AR 188.)

Despite all this, the ALJ fairly exclusively relied upon a one-time psychological examination by Dr. Cash conducted at the request of the Department of Social Services five years after Plaintiff's involuntary hospitalization for mental illness.  The Court notes that even Dr. Cash acknowledged the limitations of his findings and examination, noting that, "This evaluation was not meant to be a comprehensive psychological evaluation.  The findings are based on test performance, observation, and interaction with the claimant on the day of the evaluation only." (AR 277.)  Dr. Cash reported that Plaintiff articulated continued delusions: hearing whispers and seeing shadows, and he believed he was abducted by aliens, had his soul operated on, and has an alien in his brain. (AR 274.)

The Court sees no need to further summarize the record.  It is quite abundantly clear that Plaintiff has a mental illness which,

prior to the date last insured, appears to have caused serious deterioration in his mental functioning in areas which must be evaluated to determine whether he is disabled due to mental impairments. In evaluating mental impairments, 20 C.F.R. §404.1520a(c)(3)(4) and §416.920a(c)(3)(4) mandate that consideration be given, among other things, to activities of daily living ("ADLs"), social functioning, concentration, persistence, or pace and episodes of decompensation. These factors are generally analyzed in a Psychiatric Review Technique Form ("PRTF"), which is used at Step Three of the sequential evaluation to determine if a claimant is disabled under the Listings; however, the same data must be considered at subsequent steps unless the mental impairment is found to be not severe at Step Two. (See SSR 85-16.)

The Court is not satisfied that, as required by 20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1), consideration has been given to "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment."[1]

SSR 85-16 suggests the following as relevant evidence:

> "History, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations,

---

[1] 20 C.F.R. §404.1545(c) and §416.945(c) also require consideration of "residual functional capacity for work activity on a regular and continuing basis" and a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting."

6

>            delusions or paranoid tendencies; depression or elation;
>            confusion or disorientation; conversion symptoms or phobias;
>            psycho-physiological symptoms, withdrawn or bizarre
>            behavior; anxiety or tension.  Reports of the individual's
>            activities of daily living and work activity, as well as
>            testimony of third parties about the individual's
>            performance and behavior.  Reports from workshops, group
>            homes, or similar assistive entities."

It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

Pursuant to the September 2000 amendments to the regulations which modify 20 C.F.R. §404.1520a(e)(2) and §416.920a(e)(2), the ALJ is no longer required to complete and attach a PRTF.  The revised regulations identify five discrete categories for the first three of four relevant functional areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decomposition.  These categories are None, Mild, Moderate, Marked, and Extreme.  (§404.1520a(c)(3), (4).)  In the decision, the ALJ must incorporate pertinent findings and conclusions based on the PRTF technique. §404.1520a(e)(2) mandates that the ALJ's decision must show "the significant history, including examination and laboratory findings, and the functional limitations that were considered in

reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."

The Step Two and Three analyses (see Decision at AR 53-54) are intended to determine, first, whether a claimant has a severe mental impairment (Step Two), and if so, whether it meets or equals any of the Listings (Step Three). It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

These findings and conclusions are relevant to the Step Two and Three analysis of whether a claimant has a severe mental impairment, and if so, whether it meets or equals any of the Listings. (See 20 C.F.R. Part 4, subpart p, App. 1.) The discussion in Listing 12.00, "Mental Disorders," is relevant:

> "The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations in paragraphs B and C must be the result of the mental disorders described in the diagnostic description, that is manifested by the medical findings in paragraph A.
>
> In Listing 12.00C, entitled 'Assessment of Severity,' it is stated that, 'we assess functional limitations using

8

> the four criteria in paragraph B of the Listings: Activities of daily living; social functioning; concentration; persistence, or pace; and episodes of decompensation. Where we use 'marked' as a standard for measuring the degree of limitation, it means more than moderate but less than extreme."

The Court does not perceive that the record in this case has been at all adequately developed. A one-time psychological consultation, with testing, conducted five years after an inpatient hospitalization which reflected that Plaintiff was in a seriously deteriorated mental state, does not amount to an adequate record upon which to make a disability determination. Certainly, a psychiatric consultation would have been a necessary step in view of Plaintiff's long, documented history of mental illness. A battery of psychological tests, by itself, was inadequate to make the requisite determinations.

On remand, these matters will be addressed pursuant to the guidance provided in this Opinion.

**A. The ALJ Erred in Assessing Both Plaintiff's Credibility, and Lay Witness Testimony.**

In his second and third issues, Plaintiff asserts that the ALJ failed to properly consider the lay witness statements of his sister, Nancy Rodriguez, who completed a third party function report (AR 103-111), and also Plaintiff's own credibility. On both issues, Plaintiff is correct, and the Commissioner's arguments fail to hit the mark.

With regard to the statements of Plaintiff's sister, Plaintiff is correct that the ALJ did no more than summarize them in her decision.

(See AR at 17.) There is simply no evaluation whatsoever of her statements. As a matter of law, the lack of any reasoning in the decision makes it unsustainable. See Smolen v. Chater 80 F.3d 1273, 1288-89 (9th Cir. 1996). The Commissioner's contention that the ALJ in fact did consider these lay witness statements by comparing and contrasting them to Plaintiff's own statements is a conclusion that is completely unsupported by any part of the decision. Moreover, the Commissioner seizes on one statement by Ms. Rodriguez in which she indicates that she does not presently spend too much time with Plaintiff, but always accompanies him to his doctor visits, as apparent evidence that she does not have percipient knowledge of Plaintiff's current mental state. That much cannot be gleaned from this statement. Right before that, Plaintiff's sister indicated that she has known Plaintiff since he was born. Ostensibly, they grew up together. In view of the fact that Plaintiff appears to suffer from a long-standing mental illness, it can be reasonably presumed that his sister has first-hand knowledge and observations of his behavior. Moreover, many of her observations are highly consistent with the mental status examination conducted by Dr. Sekhon at the time of Plaintiff's admission to the hospital in July of 2003. (See AR at 159.)

Similar infirmities exist with regard to the ALJ's determination of Plaintiff's own credibility, which was depreciated as being inconsistent with the residual functional capacity assessment. (AR 17.) The only reason provided in the decision, however, is that Plaintiff's own description of his symptoms is inconsistent with the assessments by the State Agency physician and the psychological consultative examiner, who saw Plaintiff in 2008. This type of

general finding is legally insufficient under accepted standards of credibility assessment. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). The ALJ failed to specifically identify the testimony found to be not credible or to explain the particular evidence that undermines the testimony. Indeed, the Commissioner's burden is that clear and convincing reasons must be articulated to reject a claimant's testimony regarding subjective symptoms. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Here, the ALJ seemingly rejected Plaintiff's credibility based only on objective medical evidence, which, in and of itself, is an insufficient basis upon which to make such a finding.

Finally, the Court will not engage in a discussion regarding the adequacy of the hypothetical question posed to the VE, since the Court has rejected the ALJ's evaluation of the evidence, along with the RFC assessment which formed the basis for the hypothetical question. These matters must be re-examined at a new hearing, after further evidence is developed.

For the foregoing reasons, this matter will be remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

DATED: February 2, 2011 /s/
VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE